LEON DA SILVA, Respondent-Appellant, v ANTONIO MUSSO et al., Appellants-Respondents, et al., Defendants.

Second Department, September 11, 1989

### APPEARANCES OF COUNSEL

*Pliskin, Rubano & Baum (Joseph A. Baum* of counsel; *David J. Lawrence* on the brief), for Antonio Musso and another, appellants-respondents.

*Kirschenbaum & Kirschenbaum, P. C. (Samuel Kirschenbaum, Ira Levine* and *John C. O'Malley* of counsel), for Sun Place Realty Corp., appellant-respondent.

*Albanese, Albanese & Fiore (Joseph A. Fiore, Thomas G. Sherwood* and *Benjamin Vinar* of counsel), for respondent-appellant.

### OPINION OF THE COURT

SULLIVAN, J.

On August 29, 1978, the plaintiff entered into an agreement to purchase a six-story, 84-unit apartment house located in Queens County from the defendants Musso and Partridge for $641,000. Within a month, Musso and Partridge signed another contract to sell the same property to Mansour Zandieh for a higher price. The plaintiff immediately filed a lis pendens and commenced an action for specific performance. Following a nonjury trial, a judgment was entered on October 23, 1979, granting specific performance to the plaintiff and directing Musso and Partridge to render an accounting to the plaintiff from the date of the agreement to the date of delivery of the deed.

Thereafter, Musso and Partridge appealed to this court and delivered a deed to the Queens County Clerk, thereby staying the enforcement of the judgment (CPLR 5519 [a] [5]). On June 16, 1980, this court reversed the judgment of the Supreme Court, Queens County, and dismissed the complaint *(see, Da Silva v Musso,* 76 AD2d 879). While the plaintiff promptly appealed to the Court of Appeals, he did not seek to stay the order of this court *(see,* CPLR 5519 [c]) and the lis pendens was canceled on February 27, 1981. Thereafter, Musso and Partridge entered into negotiations with various parties for the sale of the property.

On April 27, 1981, Musso and Partridge entered into a contract to sell the property to the defendant Ross Howard Realty Corp. (hereinafter Ross Howard) for $850,000. During the course of the negotiations leading to this contract, Musso and Partridge informed Ross Howard, through its officers and agents, of the pendency of the litigation brought by the plaintiff. In fact, the original draft of the contract between Musso and Partridge and Ross Howard contained specific reference to this litigation. The attorney for Ross Howard considered this language a potential impediment to title and insisted that the contract be rewritten to remove all references to the litigation. On May 27, 1981, Ross Howard assigned this contract to the defendant Uzi Realty Corp. (hereinafter Uzi) which was the agent for the defendant Sun Place Realty Corp. (hereinafter Sun Place) for $1,005,000.

On August 17, 1981, the attorneys for the plaintiff and for Musso and Partridge were advised that their appeal would be heard by the Court of Appeals on September 10, 1981. This information was conveyed to Superior Abstract Corp., an agent for Commonwealth Title Company, which was conducting the title search on behalf of Sun Place. After reviewing the file on the litigation between the plaintiff and Musso and Partridge, Commonwealth Title Company refused to insure the title. At the request of Sun Place, an attorney for Musso and Partridge contacted the defendant Title Guarantee Company concerning title insurance and forwarded to them copies of certain papers in the litigation, including the notice that the appeal would be heard on September 10, 1981. Title Guarantee Company agreed to insure the title, and on September 1, 1981, Uzi assigned its rights under the contract to Sun Place, and Musso and Partridge, on that same date, conveyed title to the property to Sun Place.

On October 20, 1981, the Court of Appeals reversed the determination of this court and reinstated the judgment of the Supreme Court which granted specific performance to the plaintiff *(Da Silva v Musso,* 53 NY2d 543). Thereafter, the plaintiff, *inter alia,* sought a declaration that the deed from Musso and Partridge to Sun Place was null and void, and for an accounting. The Supreme Court entered a judgment declaring the deed from Musso and Partridge to Sun Place null and void. On this appeal and cross appeal, we agree that the deed from Musso and Partridge to Sun Place should be vacated upon the plaintiff taking title to the premises, and we further find that, under the circumstances, the plaintiff is not entitled to an accounting.

## I

The defendant Sun Place contends that it is a bona fide purchaser for value and hence its title is immune from attack despite the subsequent decision of the Court of Appeals granting specific performance to the plaintiff. In support of this contention, Sun Place notes that the plaintiff's lis pendens had been canceled two months before the start of negotiations for the sale of the property to Sun Place. However, this contention is irrelevant under the facts of this case. The cancellation of the lis pendens simply means that Sun Place was not chargeable with constructive knowledge of the pendency of the plaintiff's claim to an interest in the subject property. However, the parties agree that all the defendants had actual knowledge of the plaintiff's interest prior to the execution of the contract on April 27, 1981. At common law, a person with actual knowledge of pending litigation cannot be treated as a bona fide purchaser and any interest he subsequently acquires in the property is subject to the final disposition of the litigation *(Murray v Ballou,* 1 Johns Ch 566; *Skeel v Spraker,* 8 Paige Ch 182; *Patterson v Brown,* 32 NY 81). Absent a statute providing otherwise, the defendant Sun Place took title to the property subject to the rights of the plaintiff as determined by the Court of Appeals.

## II

The appellants-respondents rely on *Revelone, Inc. v Arlind Realty Corp.* (274 App Div 656, *affd* 299 NY 667). The facts in *Revelone* are very similar to the case at bar. Revelone, Inc. had entered into a contract to purchase certain real property

from Arlind Realty Corporation on February 11, 1946. Upon the failure of this contract to proceed to closing, Revelone, Inc. filed a notice of pendency and instituted an action for specific performance against Arlind Realty Corporation and "John Doe", the purchaser of the property under the subsequent contract from Arlind Realty Corporation. Arlind Realty Corporation successfully moved for summary judgment and the complaint was dismissed. Revelone, Inc. filed a timely notice of appeal and, pursuant to former Civil Practice Act § 586, an order was entered requiring Revelone, Inc. to file an undertaking in the amount of $6,000 within 10 days in order to stay the judgment dismissing the complaint pending appeal. Revelone, Inc. failed to file an undertaking and an order was entered discharging the notice of pendency. Thereafter, Arlind Realty Corporation conveyed the property to one Constantine Boutis pursuant to its contract with him, which had been entered into subsequent to its contract with Revelone, Inc. Revelone, Inc. then served Boutis with the summons and complaint as "John Doe".

The Appellate Division, First Department, reversed the judgment dismissing the complaint *(Revelone, Inc. v Arlind Realty Corp.,* 273 App Div 874). Revelone, Inc. then moved for leave to serve an amended complaint against all defendants setting forth all of the facts occurring after the service of its original complaint and seeking, *inter alia,* a judgment directing Boutis to convey the property to Revelone, Inc., and to account to it for all rents and profits. The Supreme Court denied the motion and upon appeal the Appellate Division reversed that determination with respect to Arlind Realty Corporation, but affirmed it as to Boutis, the subsequent purchaser, even though the proposed supplemental complaint alleged that Boutis took title from Arlind Realty Corporation with actual notice of the pendency of the litigation.

While recognizing that at common law the result would be different, the court stated that "[t]he rights and liabilities of one dealing with property pending appeal from a judgment in an action for specific performance are statutory in this State" *(Revelone, Inc. v Arlind Realty Corp.,* 274 App Div 656, 662, *supra).* Specifically, the court referred to former Civil Practice Act §§ 586 and 587 which dealt with the subject as follows:

"586. *Rights of parties after appeal from judgment in favor of owner in certain real property actions.* When an appeal is from a judgment in favor of the owner of real estate * * * in an action to compel the specific performance of a contract for

the sale thereof, *such owner shall have the same right to sell or dispose of the same as though no appeal had been taken, unless the appellant shall file with the clerk of the court a written undertaking in a sum fixed by the court* * * * upon a notice to the respondent of at least ten days * * * to the effect that the appellant, in case the judgment appealed from shall be affirmed, will pay to such owner such damages as he may suffer by reason of such appeal, not exceeding the amount of the penalty in such undertaking. Such undertaking may be filed at any time during the appeal, *but any sale of such real estate or contract to sell the same in good faith and for a valuable consideration, after said judgment and before the filing of such undertaking, shall be as valid as if such undertaking had not been filed.* In case such undertaking shall not be filed, the respondent shall be entitled at any time during such appeal to an order discharging of record any notice of pendency of action filed in the action, and, in an action to compel the specific performance of a contract for the sale of real estate, also canceling and discharging of record said contract in case the same has been recorded" (emphasis added).

"587. *Restitution.* When a final judgment or order is reversed * * * upon appeal, the appellate court, or the division or term of the same court to which the appeal is taken * * * may make or compel restitution of property, or of a right, lost by means of the erroneous judgment or order; *but not so as to affect the title of a purchaser in good faith and for value. When property has been sold, the court may compel the value or the purchase price to be restored or deposited to abide the event of the action, as justice requires*" (emphasis added).

In analyzing these sections, the *Revelone* court observed that former Civil Practice Act § 586, (1) expressly gave an owner of real property who was successful in an action for specific performance the right to sell or dispose of the property during the pendency of the appeal unless the appellant filed an undertaking, (2) expressly confirmed the validity of any sale or contract to sell the property in good faith and for valuable consideration during the pendency of the appeal and prior to the filing of the undertaking, and (3) permitted the cancellation of a notice of pendency unless the undertaking was filed. The court further noted that former Civil Practice Act § 587 prohibited an appellate court, upon reversing a judgment in favor of the owner, from affecting the title of a subsequent purchaser in good faith and for value. Accordingly,

under this section, the successful appellant was relegated solely to recovery of damages. Since the owner of the property, who was the respondent and who clearly had actual notice of the pendency of the appeal, was expressly authorized by former Civil Practice Act § 586 to sell or dispose of the property in the absence of an undertaking, the *Revelone* court reasoned that a purchaser of the property with actual notice of the pendency of the appeal was a bona fide purchaser and entitled to the protection of former Civil Practice Act § 586.

## III

The appellants-respondents' reliance on *Revelone (supra)* is misplaced. The *Revelone* decision was based entirely upon certain statutory provisions that no longer exist. In enacting the Civil Practice Law and Rules (CPLR; L 1962, ch 308), the Legislature expressly repealed the entire former Civil Practice Act as it then existed, including former Civil Practice Act §§ 586 and 587 (CPLR 10001). The CPLR applies to all actions commenced after its effective date, September 1, 1963 (CPLR 10003, 10005). Hence, all of the actions involved herein were and are to be determined under the CPLR rather than the former Civil Practice Act.

Former Civil Practice Act § 587, dealing with restitution, has now become CPLR 5523 and the language has been changed to permit, rather than mandate, an appellate court to substitute damages for specific performance. However, the treatment of former Civil Practice Act § 586 was far different. The only provision of Civil Practice Act § 586 that has survived in the CPLR is that portion which permitted the discharge of a notice of pendency if an undertaking was not filed pending appeal. That provision now appears as the last clause of CPLR 6514 (a). Of special significance is the fact that the CPLR does not contain that portion of former Civil Practice Act § 586 which expressly validated the sale by an owner, pending an appeal from a judgment denying specific performance, in the absence of an undertaking from the appellant. "Upon the repeal of a statute and its reenactment in another form, such clauses in the earlier acts as are not retained in the later are deemed repealed by necessary implication" (McKinney's Cons Laws of NY, Book 1, Statutes § 373; *see, Matter of Bates v Lang,* 26 AD2d 462). Nor can it be said that there has been such a substantial reenactment of the provisions of former Civil Practice Act § 586 or of the former Civil Practice

Act in general as to constitute a continuation of the provision of former Civil Practice Act § 586 *(see,* General Construction Law § 95).

As the *Revelone* court itself recognized *(supra,* 274 App Div, at 662), "[t]he rights and liabilities of one dealing with property pending appeal from a judgment in an action for specific performance are statutory in this State". Since the statutory underpinnings of the *Revelone* decision have been repealed by the enactment of the CPLR, we conclude that the *Revelone* holding is no longer binding and a purchaser who buys with actual knowledge of the pendency of an appeal in an action seeking specific performance of a prior contract for the sale of the property takes title subject to the rights of the appellant as ultimately determined by the appellate court *(see, Northern Operating Corp. v Anopol,* 25 AD2d 551). As soon as the plaintiff acquires title from the defendants Musso and Partridge pursuant to the order of the Supreme Court, Queens County, dated May 5, 1988, in the companion case of *Da Silva v Musso* (— AD2d — [decided herewith]), the deed of Sun Place should be canceled, and the plaintiff is entitled to possession of the premises. We therefore affirm the judgment of Supreme Court, Queens County, insofar as it canceled and declared null and void the deed transferring ownership of the property from the defendants Musso and Partridge to the defendant Sun Place.

## IV

■ Turning to the plaintiff's claim for an accounting of rents and profits, it is well settled that when specific performance of a contract to convey real property is granted, the court will enforce the rights of the parties in such manner as to put them as nearly as possible in the position they would have occupied had the conveyance been made when required by the contract *(see generally, Freidus v Eisenberg,* 123 AD2d 174, *mod on other grounds* 71 NY2d 981; Annotation, 7 ALR2d 1204, 1211). This will usually be accomplished by requiring the vendor to account to the successful vendee for the net rents and profits on the property during the period the vendee was kept from possession of the property *(see, Bostwick v Beach,* 103 NY 414; *Matter of 50-05 43rd Ave. [Canfield Props. Corp.—Harris],* 271 App Div 44). However, the plaintiff herein sought and received an accounting from the defendant Musso and Partridge in a companion case. Under the terms of the

order made in that matter, the plaintiff is entitled to the net rents and profits from October 15, 1978, until September 1, 1981, and the *net proceeds of the sale to Sun Place on September 1, 1981.*\* Hence, having charted his course for relief in this fashion, the plaintiff cannot now in equity claim further damages.

We express no opinion regarding any potential claims which may exist among the various defendants with respect to each other, as no issue concerning such claims is presented for our consideration on the instant appeal and cross appeal.

Accordingly, the judgment is modified, on the law, by adding to the second, third and fourth decretal paragraphs thereof, after the words "ORDERED, ADJUDGED AND DECREED" the words "upon the plaintiff taking title to the premises", and as so modified, the judgment is affirmed insofar as appealed and cross-appealed from, without costs or disbursements.

LAWRENCE, KUNZEMAN and BALLETTA, JJ., concur.

Ordered that the judgment is modified, on the law, by adding to the second, third and fourth decretal paragraphs thereof, after the words "ORDERED, ADJUDGED AND DECREED" the words "upon the plaintiff taking title to the premises"; as so modified, the judgment is affirmed insofar as appealed and cross-appealed from, without costs or disbursements.

---

\* While the order of the Supreme Court, Queens County, dated May 5, 1988, is the subject of a companion appeal *(Da Silva v Musso,* — AD2d — [decided herewith]), no issue is raised therein concerning this aspect of the order.