■ VOLUTO VENTURES, LLC, on Behalf of HARBOUR ENTERTAINMENT, INC., Appellant, v JENKENS & GILCHRIST PARKER CHAPIN LLP, Respondent, et al., Defendant. [847 NYS2d 559]—

Order, Supreme Court, New York County (Emily Jane Goodman, J.), entered June 13, 2006, which granted the motion of defendant Jenkens & Gilchrist Parker Chapin LLP (Jenkens) to dismiss the complaint for failure to state a cause of action, unanimously reversed, on the law, without costs, the motion denied, and the complaint reinstated.

Plaintiff Voluto Ventures, LLC (Voluto), suing derivatively on behalf of defendant Harbour Entertainment, Inc. (Harbour), alleges that Harbour retained Jenkens to represent it in applying, through its partly owned subsidiary, Stapleton Studios LLC

(Stapleton), to the New York City Economic Development Corporation (EDC) for a long-term lease of waterfront property located in Staten Island, where it planned to develop an entertainment complex including a motion picture studio, marina and hotel. Voluto alleges that, unbeknownst to those Harbour shareholders who were not also shareholders of Stapleton, Jenkens advised the chairman of the board of directors of Harbour that his son, Marlowe Walker III (Bob Walker), could be involved in the project and in negotiations with the EDC, notwithstanding that he had been permanently barred from the securities industry by the National Association of Securities Dealers in 1991 and had pleaded guilty to criminal offenses involving violations of the federal securities laws in October 2001, and that his regulatory and criminal history did not have to be disclosed. Voluto alleges that Jenkens' advice was improper and that, but for the improper advice, Harbour would not have invested $2 million through Stapleton in permanent improvements to the site, and that when the City ultimately terminated Stapleton's occupancy and ceased negotiations, it cited the concealment of Bob Walker's criminal history as a reason for the termination.

The motion court erred in finding that because it was undisputed that other factors, including Stapleton's inability to raise necessary financing, contributed to the failure of the project, Voluto would be unable as a matter of law to prove "but for" causation of the loss. The pleadings permit the inference that the proximate cause of the loss was the legal malpractice (*see Lappin v Greenberg*, 34 AD3d 277, 278 [2006]). The evidence that other factors contributed to the loss raises an issue of fact that may not be determined at the pleading stage (*see Weil, Gotshal & Manges, LLP v Fashion Boutique of Short Hills, Inc.*, 10 AD3d 267, 270-271 [2004]; *see also National Enters. Corp. v Dechert Price & Rhoads*, 246 AD2d 481, 482 [1998]).

Jenkens' alternative arguments are unavailing. Jenkens failed to submit evidence sufficient to establish, as a matter of law, that in advising the concealment from the City of the criminal conviction of a de facto principal of a corporation seeking to undertake a major development project with the City it did not depart from the requisite standard of care in the legal community (*see Bistricer v Singer, Bienenstock, Zamansky, Ogele & Selengut, LLP*, 14 AD3d 468, 469 [2005]; *Estate of Nevelson v Carro, Spanbock, Kaster & Cuiffo*, 259 AD2d 282, 284 [1999]). Nor did Jenkens establish that Voluto lacked standing to bring a derivative action because the malpractice was alleged to have started before Voluto acquired shares in Harbour. Voluto alleges

that the malpractice continued through the spring and summer of 2002, after it had invested, while Harbour continued to advance monies to Stapleton based on Jenkens' improper advice.

Finally, Voluto demonstrated the futility of a demand on the board of directors of Harbour by alleging that the chairman of the board was Bob Walker's father and that he dominated two of the other four members of the board (*see* Business Corporation Law § 626 [c]; *Bansbach v Zinn*, 1 NY3d 1, 9 [2003]). Concur—Andrias, J.P., Nardelli, Gonzalez, Sweeny and Malone, JJ.